FILED
2024 Mar-27 PM 01:20
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **FREDERICK KUMI,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 5:22-cv-01430-LCB |
| ) | |
| **SOCIAL SECURITY** ) | |
| **ADMINISTRATION,** ) | |
| **COMMISSIONER,** ) | |
| ) | |
| **Defendant.** ) | |

## **MEMORANDUM OPINION**

Plaintiff Frederick Kumi seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the Commissioner of the Social Security Administration ("Commissioner"), regarding his claim for disability and disability insurance benefits. The Court carefully considered the record, and for the reasons expressed herein, **AFFIRMS** the Commissioner's decision.

## **LAW AND STANDARD OF REVIEW**

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated under it. The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

of not less than 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests on the claimant at the first four steps of this five-step process; the burden then shifts to the Commissioner at step five, if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id*. at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.02. *Id*. at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§

404.1520(a)(4)(iii), 404.1525.  That is, a claimant who satisfies steps one and two qualifies automatically for disability benefits if the claimant suffers a listed impairment.  *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997))).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work.  20 C.F.R. § 404.1520(e).  At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work.  *See id.* § 404.1520(a)(4)(iv).  If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled.  *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education and past work experience, that the claimant is capable of performing other work.  *Id.* §§ 404.1512(b)(3), 404.1520(g).  If the claimant can perform other work,

the evaluator will not find the claimant disabled. *See id.* § 404.1520(a)(4)(v); *see also* 20 C.F.R. § 404.1520(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The Court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings . . . 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). Although the Court must "scrutinize the record as a whole . . . to determine if the decision reached is reasonable . . . and supported by substantial evidence," the Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . . is 'more than a mere scintilla,' . . . [and] means – and means only – 'such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## FACTUAL AND PROCEDURAL HISTORY

Kumi filed an application for disability and disability insurance benefits on June 24, 2021, alleging disability as of June 15, 2020. (Tr. 293-304). Kumi's claim was denied initially on December 17, 2021, and upon reconsideration on March 25, 2022. (Tr. 179-183, 192-201). Thereafter, Kumi filed a written request for a hearing on March 31, 2022. (Tr. 208). An Administrative Law Judge ("ALJ") held a telephone hearing on July 12, 2022. (Tr. 254).

The ALJ issued an opinion on August 12, 2022, denying Kumi's claims. (Tr. 16-30). Applying the five-step sequential process, the ALJ found at step one that Kumi did not engage in substantial gainful activity since June 15, 2021, the alleged onset date. (Tr. 21). At step two, the ALJ found Kumi manifested the severe impairments of cervical and lumbar degenerative disc disease, posttraumatic stress disorder, major depressive disorder, and generalized anxiety disorder. (*Id.*). At step three, the ALJ found Kumi's impairments, or combination of impairments, did not meet or medically equal any impairment for presumptive disability listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 23).

At step four, the ALJ found Kumi exhibited the residual functional capacity ("RFC") to perform light work with the following exceptions:

> he requires the option to sit for 30 minutes after every 30 minutes of standing; he can never climb ladders or scaffolds; he can occasionally climb ramps and stairs, balance as that term is defined by the Selected Characteristics of Occupations in the Dictionary of Occupational Titles (DOT), stoop, kneel, crouch, and crawl; he can never work around hazards such as unprotected moving mechanical parts and unprotected heights; he can only perform simple tasks; he can only respond to occasional changes in a routine work setting; and he is limited to occasional interaction with the public and coworkers in work situations.

(Tr. 23).

In addition, the ALJ determined Kumi could not perform past relevant work. (Tr. 28). At step five, the ALJ determined Kumi could perform a significant number of jobs in the national economy considering his age, education, work experience, and RFC. (Tr. 29). Accordingly, the ALJ determined Kumi has not suffered a disability, as defined by the Social Security Act, since June 15, 2021. (Tr. 30).

Kumi requested review of the ALJ's decision. (Tr. 278). On September 9, 2022, the Appeals Council denied review, which deems the ALJ's decision as the Commissioner's final decision. (Tr. 1-6); *see Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) ("When the Appeals Council denies review, the decision of the ALJ becomes the final decision of the Secretary." (citing 20 C.F.R. § 404.955)). On November 9, 2022, Kumi filed his complaint with the Court seeking review of the ALJ's decision. (Doc. 1).

## ANALYSIS

In this appeal, Kumi argues the ALJ failed to properly apply the pain standard and that his decision is not supported by substantial evidence. (Doc. 11 at 5). For the reasons discussed below, the Court disagrees.

As previously discussed, at step four of the sequential analysis the ALJ formulates a claimant's RFC by assessing his or her "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The claimant's RFC represents "the most [he or she] can still do despite [their] limitations." *Id.* at § 404.1545(a)(1). Assessing a claimant's RFC lies within the exclusive province of the ALJ. *See id.* at § 404.1527(d)(2) ("[T]he final responsibility for deciding [a claimant's RFC] is reserved to the Commissioner."); *id.* at § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing [a claimant's] residual functional capacity."); *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021) (citing 20 C.F.R. § 404.1546(c)) ("The Commissioner of the Social Security Administration has, at the hearing level, delegated to an administrative law judge the responsibility of determining a claimant's residual functional capacity and whether the claimant is disabled."); *Oates v. Berryhill*, No. 17-0130-MU, 2018 WL 1579475, at *8 (S.D. Ala. Mar. 30, 2018) ("The responsibility for making the residual functional capacity determination rests with the ALJ.").

Here, Kumi argues his self-described limitations contradict the ALJ's finding that he retained the residual functional capacity to perform a limited range of light work:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

(Doc. 11 at 5); 20 C.F.R. § 404.1567(b).

Specifically, during the hearing, Kumi claimed he stopped working in June 2021 because he was having back and knee pain, and suffered from anxiety and post-traumatic stress disorder. (Tr. 42). His symptoms also included lack of concentration and irritability. (Tr. 45). As for his abilities, Kumi stated that he can sit and stand for about 15 minutes, and walk about half a block. (Tr. 48). In terms of treatment, he proclaimed his prescription medication does not help with his pain. (*Id.*). In essence, Kumi argues that his testimony and subjective complaints of pain render him disabled.

> A three-part "pain standard" applies when a claimant attempts to establish disability through her own testimony of pain or other subjective symptoms. [*Wilson* v. *Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)]. The pain standard requires evidence of an underlying medical condition and either objective medical evidence that confirms

8

> the severity of the alleged pain arising from that condition or a showing that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *Id.*

*Porto v. Acting Comm'r of Soc. Sec. Admin.*, 851 F. App'x 142, 148 (11th Cir. 2021). A claimant's testimony coupled with evidence that meets this standard suffice "to support a finding of disability." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citation omitted); *see also Hollingsworth v. Comm'r of Soc. Sec.*, 846 F. App'x 749, 752 (11th Cir. 2021).

Social Security Ruling ("SSR") 16-3p eliminates the use of the term "credibility" as it relates to assessing the claimant's complaints of pain and clarifies that the ALJ "will consider any personal observations of the individual in terms of how consistent those observations are with the individual's statements about his or her symptoms as well as with all of the evidence in the file." SSR 16-3p, 2017 WL 5180304, *7 (Oct. 25, 2017). An ALJ rendering findings regarding a claimant's subjective symptoms may consider a variety of factors, including: the claimant's daily activities; symptom location, duration, frequency, and intensity; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medication taken to alleviate the symptoms; and other factors concerning functional limitations and restrictions due to symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3), (4).

SSR 16-3p further explains that the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and

supported by the evidence, and be clearly articulated so the individual and any subsequent review can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, *10; *see also Wilson*, 284 F.3d at 1225 (If an ALJ discredits a claimant's subjective testimony, the ALJ "must articulate explicit and adequate reasons for doing so.").

Applying the pain standard, the ALJ concluded Kumi's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but he nonetheless found Kumi's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 25-26). The ALJ considered Kumi's objective imaging and testing, physical and mental examinations, course of treatments, and prior administrative findings. (Tr. 24-28).

In response, Kumi argues that the ALJ's findings are based upon a mischaracterization and incomplete review of the medical record. (Doc. 11 at 8). However, the record does not support that assertion. Looking at Kumi's first argument, he states the "ALJ's determination that the objective testing does not support [his] allegations of debilitating pain and limitation is not supported by substantial evidence," because while the "ALJ acknowledged the various x-rays and MRI's of [his] lumbar and cervical spine," the ALJ "did not properly consider the significant findings of those diagnostic tests." (*Id.*).

The ALJ discussed various x-rays and MRIs that showed Kumi suffered from "mild degenerative disc disease and facet arthrosis," "disc protrusion," "disc osteophyte with mild to moderate compromise," "mild . . . right paramedian posterior disc protrusion," "mild multilevel degenerative disc disease," and "small osteophytes." (Tr. 26). However, Kumi's electromyography and nerve conduction studies contained "basically normal" results and showed "no significant narrowing, sclerosis, or erosions." In the aggregate, the ALJ found the objective imaging and testing record to be "mostly mild." (*Id.*).

Kumi essentially disagrees with how the ALJ weighed the objective imaging and testing record, restates and emphasis the evidence that the ALJ already discussed, and asks the Court to inappropriately reweigh the evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence."). Moreover, the issue before the Court is not whether the evidence might support Hightower's allegations but whether substantial evidence supports the ALJ's RFC finding. *See Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). Accordingly, the Court finds that the record substantially supports the ALJ's RFC

finding.

Next, Kumi contends the ALJ erred in analyzing his physical and mental examinations by overlooking, mischaracterizing, and isolating the record. (Doc. 11 at 9, 15). Specifically, Kumi states the "ALJ's description and analysis of [his] various physical examinations illustrate [the ALJ's] selective treatment of the evidence in this case." (*Id.* at 9). In addition, Kumi avers that the ALJ relied upon isolated mental examination treatment notes to support his rationale. (*Id.* at 15). Indeed, Eleventh Circuit precedent does not tolerate "cherry picking" evidence. *See McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986) ("It is not enough to discover a piece of evidence which supports [a] decision, but to disregard other contrary evidence," and a decision is not supported where it was reached "by focusing upon one aspect of the evidence and ignoring other parts of the record"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."). However, the ALJ noted that Kumi's physical examinations did contain abnormalities but found that the abnormalities did not support a finding for disability because the abnormalities "fluctuated or were longstanding and present when the claimant was working at a very heavy exertional level." (Tr. 26). Similarly, the ALJ also discussed how Kumi's psychologist observed how he had an anxious mood,

congruent affect, and passive suicidal ideation at specific times, but that Kumi otherwise had mostly normal mental status examination findings. (Tr. 27-28).

Ultimately, the ALJ discussed how Kumi's objective mental and physical examinations revealed some limitations but did not support the degree of limitations he alleged. For this Court to find otherwise, it would have to provide greater weight to Kumi's evidence. The Court, however, accords deference to the ALJ's factual findings, and "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. *Winschel v. Comm'r of Social Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

In an effort to save his argument, Kumi points out evidence that the ALJ did not mention in his finding. (Doc. 10-11). Yet, "[s]o long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1326 (11th Cir. 2021) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)). Nothing in the ALJ's decision supports that he did not consider the whole record. (Tr. 20 ("After careful consideration of *all the evidence*, the undersigned concludes the claimant has not been under a disability within the meaning of the Social Security Act from June 15, 2021, through the date of this decision." (emphasis added))). Furthermore, the evidence that Kumi points out does not render a different

conclusion because the record as a whole provides substantial evidentiary support for the ALJ's RFC finding. (Tr. 26-28).

Similarly, Kumi makes the same argument as to his course of treatment. (Doc. 11 at 11). That is, the "ALJ's description of his treatment as conservative and effective is not supported by substantial evidence." (*Id.*). But like the flaws of his earlier arguments, the ALJ points to substantial evidence in the record to support his decision. (Tr. 27). And although some evidence could support a different finding, the relevant inquiry is not whether some evidence might support greater limitations, but whether substantial evidence supports the ALJ's decision. *See Sims*, 706 F. App'x at 604.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** and **ORDERED** this March 27, 2024.

_____
**LILES C. BURKE**
UNITED STATES DISTRICT JUDGE